IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Contreras-Galdean, | No. CIV 15-0662-PHX-NVW (MHB) |
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

Petitioner Manuel Contreras-Galdean, an inmate currently incarcerated in the Arizona State Prison, in Winslow, Arizona, has filed a *pro se* Petition for a Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. §2254 (Doc. 1). Respondents have filed an Answer (Doc. 11), and Petitioner has filed a Reply and Memorandum of Points and Authorities in Support of Reply (Docs. 16, 17). Petitioner raises two claims in his Petition: (1) trial counsel was ineffective in telling Petitioner that he could back out of the plea agreement after signing it, and (2) trial counsel was ineffective for failing to object to the sentencing court's consideration of aggravating factors not found by a jury. (Doc. 1 at 6-7, 12-21.) Respondents assert that ground one of Petitioner's habeas petition lacks merit, and ground two is procedurally barred. (Doc. 11.)

\\\

\\\

(omitted)

**BACKGROUND**

On November 24, 2008, Petitioner was indicted by an Arizona grand jury on one count of Manslaughter, a class 2 dangerous felony, and one count of Aggravated Assault, a class 3 dangerous felony. The charges stemmed from an auto accident that killed one person, and seriously injured another. Petitioner ultimately agreed to plead guilty, and in doing so, he admitted the following facts:

> On November 15, 2008, in Maricopa County, [Petitioner] was driving east down Guadalupe Road preparing to take a left turn on Sossaman. [Petitioner] took the left turn failing to yield to oncoming traffic, which resulted in a traffic accident. The driver of that vehicle was Matthew Tracy, who sustained a fractured left rib. And Matthew Tracy's sister, Kelly Tracy, was the passenger. She passed away due to her injuries.
>
> Within three hours of driving, [Petitioner]'s blood was taken. The BAC came back at a .192. . . .[D]riving with an alcohol concentration of that degree and failing to yield while taking the left-hand turn is reckless. Those reckless actions caused the death of Kelly Tracy and the cracked left rib of Mr. Matthew Tracy.

(Exh. B[1] at 17-18.)

Petitioner entered into a plea agreement on October 2, 2009, in which he agreed to plead guilty to the Manslaughter count as charged, and to the Aggravated Assault charge as amended to a class 3 non-dangerous offense. (Exh. C.) In the plea agreement, Petitioner agreed to be sentenced to 10.5 to 14 years in prison on the Manslaughter count, and a consecutive sentence of probation on the Aggravated Assault count. (Id. at 1) Petitioner waived and gave up any objection to any sentence imposed consistent with his plea agreement, gave up his right to appeal, and gave up his right to have a jury to determine any fact used to impose a sentence within the 10.5 to 14 years agreed to. (Id. at 1-2) Petitioner initialed each paragraph of his plea agreement and signed at the end, agreeing that he had approved all of the paragraphs in the agreement. (Id. at 1-3) Court interpreter SR Loos also signed the agreement at the end. (Id. at 3.)

---

[1]All exhibits referenced were attached to Respondents' Answer, (Doc. 11), unless otherwise noted.

Petitioner appeared before the trial court on October 6, 2009, to change his plea. (Exh. B.) Court interpreter Scott Loos was present to translate from English to Spanish for Petitioner, and Petitioner acknowledged that he had no difficulty understanding Mr. Loos. (<u>Id.</u> at 4.) During the plea colloquy, the court asked Petitioner if anyone made "any promises to [him] that are not written down," and whether or not anyone had "forced or threatened [Petitioner] in any way to get [him] to plead guilty." To each question Petitioner answered "no." (Exh. B at 6-7.) The court advised Petitioner that he was free to back out of the agreement if he had any second thoughts before entering his guilty plea. (<u>Id.</u> at 14.) More specifically, the court warned that:

> [I]f I ask a question that scares the heck out of you, and I will give you 30 seconds to talk to your lawyer, and if he can't satisfy you with his response that everything is o.k., you could say: Time out, Judge. Stop. We're not finishing this. . . .
>
> [I]n about three pages I'm going to say the plea was accepted and entered of record. When I say that. . .assuming that everything is fine and we get to that point, when I say those words, that's when this thing drives into concrete. From that point on, you cannot back out of the plea agreement. You understand that?

(<u>Id.</u> at 14.)

Petitioner replied "Yes." (<u>Id.</u>) The court explained there was one exception to this rule where Petitioner could later have the plea agreement rescinded if "something went wrong in the plea bargaining process and that as a result of whatever that was that went wrong you are being. . .subjected to an injustice." (<u>Id.</u>) Petitioner also acknowledged that his attorney had read and explained the plea agreement to him, that he had initialed and signed the plea agreement, and that he understood it. (<u>Id.</u> at 5-6.) Petitioner indicated that he understood the charges he was pleading guilty to and understood he would be sentenced to between 10.5 and 14 years in prison. (<u>Id.</u> at 6-7.) Before the proceedings concluded, once again the court asked Petitioner if anyone had forced or threatened him in any way to plead guilty, and once again Petitioner said "no." (<u>Id.</u> at 17.)

A month later Petitioner filed a Motion to Change Counsel, claiming that a "major communication barrier" existed between him and his counsel, that his counsel had told Petitioner that he had no choice but to sign the plea agreement, and that "when [Petitioner]

went back to court [he] could refuse it after being signed." (Exh. D at 1-2.) Petitioner claimed his counsel never gave him "all the paperwork including the police report," and requested that the court appoint new counsel. (Id., at 2-3.) Petitioner also claimed that he resisted signing the plea agreement "in the first place," and indicated his desire to "withdraw [his] guilty plea." (Id. at 3.)

At a status hearing before the court on February 10, 2009, Petitioner was represented by new counsel, who advised the court that, after consulting with Petitioner and reviewing with him the transcript of the change of plea proceeding, that he did "not have enough legal basis to file [a motion to withdraw from the guilty plea]." (Exh. E at 4.) Petitioner's counsel also indicated that, in any event, he did not feel it was in Petitioner's best interest to withdraw. (Id.) The court allowed Petitioner to present his own "argument for the record which forms the basis, at least in [Petitioner's] mind, for withdrawing from the plea agreement." (Id. at 9.) In response, Petitioner stated that "many things have not been brought to light, . . .that the other attorney never showed me the discovery or anything, . . . [that] he never gave it to me until I pled guilty." (Id. at 12.) Petitioner then stated that he had asked for the paperwork/discovery some time before his sentencing so that his new attorney could "set all of that straight." (Id.) The presiding judge noted that he had reviewed the change of plea transcript, and denied Petitioner's motion to withdraw, finding no manifest injustice occurred. (Id. at 8, 13.)

Petitioner was sentenced on March 26, 2011, to an aggravated sentence of 14 years' imprisonment on count one and four years' probation on count two. (Exh. F at 46, 50.) The court found in aggravation that Petitioner had two prior DUI convictions. (Id. at 49-50.) Petitioner subsequently filed a notice of post-conviction relief ("PCR") on November 17, 2011. (Exh. G.) The court appointed counsel to represent Petitioner. (Exh. H.) Petitioner's appointed counsel could not find any colorable issues to raise, and therefore Petitioner filed a *pro se* PCR petition on November 13, 2012. (Exh. I.)

In his PCR petition, Petitioner raised the following claims, as is relevant here: (1) ineffective assistance of counsel ("IAC") because trial counsel allegedly promised Petitioner

that he would "rip apart" the plea agreement if Petitioner changed his mind, and (2) Petitioner's sentence violated his Sixth Amendment rights because the aggravating facts were found by a judge rather than a jury. (Exh. I at 3-4.)  The trial court dismissed Petitioner's PCR petition, finding that he failed to raise any colorable claims. (Exh. K.)  Specifically, the court held:

> Defendant argues that his counsel was ineffective by not raising A.R.S. Section 28-661 which requires a driver to remain at the scene of an accident involving death or physical injuries.  It is not a defense that Defendant remained at the scene of the accident which Defendant caused, resulting in the death of 16 year old Kelly Tracy and injuries to her 17 year old brother Matthew; rather, it is a legal requirement.  Had Defendant not remained at the scene, he could have been charged with another felony.  Defense counsel was not ineffective as relates to this issue.

> Defendant also contends that his attorney pressured or forced him to sign the Plea Agreement, allegedly telling Defendant that if he later decided he did not want the Plea, his attorney would "rip the plea apart". [] Defendant claims he signed the Plea "with that condition".  This claim flies in the face of Defendant's unequivocal acknowledgments to the Court in the change of plea proceeding, that nobody had made him any promises that were not contained in the written Plea Agreement and that nobody had forced him or threatened him in any way to get him to plead guilty. [] In fact, at the end of the plea colloquy, as the Defendant was admitting guilt, the Court repeated the question "Once again, has anyone forced or threatened you in any way to make the plea?" to which Defendant replied "No." []

> Defendant's claim that his attorney told him he could change his mind and back out of the plea after its acceptance by the Court also is belied by the Court advising Defendant at the change of plea that Defendant could not change his mind and withdraw from the plea unless he could prove a manifest injustice. []

> Defendant further expressly agreed in the Plea Agreement, immediately above his signature on p. 4, that he was "voluntarily" signing and accepting the Plea Agreement.  Despite that representation, Defendant did try to withdraw from the Plea, claiming, as he does again in his PCR, that he felt forced to sign the Plea.  Judge Trujillo granted Defendant's request for new counsel and permitted briefing on Defendant's request to be let out of the Plea Agreement.  At the hearing on 2/10/10, Defendant's new counsel indicated that he found no factual or legal basis on which Defendant could withdraw from the Plea Agreement as he found no manifest injustice.  After hearing Defendant present his own *pro per* motion to withdraw from the Plea Agreement, Judge Trujillo denied Defendant's request, finding there was no manifest injustice.  Thus, Defendant has already had the opportunity to be heard on the issue of allegedly feeling forced to enter the Plea Agreement, and the Court found that claim was not established.

> Defendant also contends that he was entitled to a jury finding of aggravating factors and that consequently, the Court's use of aggravators at sentencing was improper, resulting in an unlawful sentence. Defendant in fact

waived the right to have a jury find aggravators and expressly agreed to the Court doing so, all as is standard under a plea agreement, and all of which was set forth in paragraph 7 of the written Plea Agreement that Defendant signed. The Court also expressly reiterated to Defendant in the change of plea proceeding that Defendant was giving up his right to have a jury determine "all of the sentencing factors". []

The sentence imposed by Judge Trujillo after considering all the matters presented for sentencing was within the range of 10.5 to 14 years that the parties had expressly and specifically agreed to in paragraphs 1 and 2 of the written Plea Agreement. During the change of plea proceeding, the Court advised Defendant **five separate times** that under the plea, Defendant was agreeing to be sentenced to between 10.5 and 14 years in the Department of Corrections. Defendant acknowledged understanding and agreeing to that each time. The Court finds Defendant's claims attacking the Plea Agreement and the Court's sentence to be meritless.

THE COURT FURTHER FINDS unavailing Defendant's efforts to challenge the evidence. Defendant contends among other claims that the accident would likely have occurred even if he had not been driving his vehicle under the influence; the victims actually caused the accident and Kelly may not have been wearing a seat belt; and emergency responders were negligent by not air lifting the victims and in inserting a breathing tube, which amounted to a superseding, intervening cause of the Kelly's death and Matthew's injuries. Defendant cannot be heard to now disagree with the evidence because he waived and gave up "any and all motions, defenses, objections, or requests which he has made or raised, or could assert [after entering the plea agreement] to the court's entry of judgment against him and imposition of a sentence upon him consistent with the [plea] agreement". [] The Court's sentence was consistent with the Plea Agreement. Defendant avowed to the Court during the change of plea hearing that Defendant's attorney had explained the Plea to Defendant and that Defendant in fact understood it. [].

(emphasis in original) (Exh. K.)

Petitioner then filed a petition for review to the Arizona Court of Appeals, which granted review and affirmed the decision of the trial court on the above issues, but additionally addressed a claim Petitioner had raised in his PCR petition that had not been addressed by the trial court. (Exh. L, N.) Petitioner filed a petition for review to the Arizona Supreme Court, which was denied summarily on March 19, 2015. (Exhs. N, O.) Petitioner filed his habeas petition within 1-year of that denial, on April 13, 2016, thus it is timely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 1-year statute of limitations. 28 U.S.C. § 2244(d)(1)(A).

\\\

\\\

1

**LEGAL ANALYSIS**

2

    **A.    Merits Analysis.**

3          Respondents assert that ground one of Petitioner's habeas petition should be denied

4    on its merits.  In reviewing a cognizable claim under the AEDPA, a federal court "shall not"

5    grant habeas relief with respect to "any claim that was adjudicated on the merits in State

6    court proceedings" unless the State court decision was (1) contrary to, or an unreasonable

7    application of, clearly established federal law as determined by the United States Supreme

8    Court; or (2) based on an unreasonable determination of the facts in light of the evidence

9    presented in the State court proceeding.  28 U.S.C. § 2254(d); see Williams v. Taylor, 529

10    U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court

11    as to the AEDPA standard of review).  "When applying these standards, the federal court

12    should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d

13    1044, 1055 (9th Cir. 2004).

14          A state court's decision is "contrary to" clearly established precedent if (1) "the state

15    court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

16    or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

17    decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

18    precedent."  Taylor, 529 U.S. at 405-06.  "A state court's decision can involve an

19    'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule

20    but then applies it to a new set of facts in a way that is objectively unreasonable, or (2)

21    extends or fails to extend a clearly established legal principle to a new context in a way that

22    is objectively unreasonable."  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002)

23    (citation omitted).    This Court must "presume the correctness of state courts' factual

24    findings unless  [petitioners] rebut this presumption with 'clear and convincing evidence.'"

25    Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007) (citing 28 U.S.C. §2254(e)(1)).

26    **Claim 1.**

27          Petitioner asserts that his trial counsel was ineffective in telling him he could

28    withdraw from the plea agreement after signing it.  The trial court found Petitioner's claim

unsupported by the record, and "flies in the face of [Petitioner]'s unequivocal acknowledgments to the Court in the change of plea proceeding, that nobody had made him any promises that were not contained in the written Plea Agreement and that nobody had forced him in any way to get him to plead guilty." (Exh. K at 2.)  The court cited to numerous instances during the change of plea proceeding in which Petitioner acknowledged that no promises or force was used to get him to plead guilty, and acknowledged that he could not withdraw from the plea after the trial court accepted it unless Petitioner could prove a manifest injustice. (Id.)  If Petitioner had been told by his counsel that he could withdraw from his plea even after the trial judge accepted it, he remained silent in the face of completely contradictory warnings from the trial judge.  The court found that Petitioner had failed to demonstrate, under Strickland v. Washington, 446 U.S. 668 (1984), that "(1) the performance of his attorney was deficient or unreasonable under all the circumstances, or (2) that there is a reasonable probability that, but for his attorneys' alleged unprofessional errors, the result of the proceedings would have been different." (Id. at 1.)

The state court's denial of Petitioner's claim was not (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).  The trial court applied the Strickland standard, performed a detailed analysis of the undisputed record before the court and reasonably determined that Petitioner's claim was not established.  The appellate court's affirmation of the trial court decision - "[we] have reviewed the record and are satisfied that, in its order, the court clearly identified and thoroughly addressed the majority of [Petitioner]'s claims and correctly resolved the issues in a manner sufficient to permit this or any other court to conduct a meaningful review" - was likewise reasonable. (Exh. M at ¶6.)

## B.    Exhaustion and Procedural Default.

Respondents assert that ground two of Petitioner's habeas petition should be denied as procedurally defaulted.  Before a federal court may grant habeas corpus relief to a state

1   prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. §

2   2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Coleman v. Thompson, 501

3   U.S. 722, 731 (1991).  The federal court will not entertain a petition for writ of habeas corpus

4   unless each and every issue has been exhausted.  Pliler v. Ford, 542 U.S. 225, 230 (2004);

5   Rose v. Lundy, 455 U.S. 509, 521-22 (1982).   To properly exhaust state remedies, the

6   prisoner must have afforded the state courts the opportunity to rule upon the merits of his

7   federal constitutional claims by "fairly presenting" them to the state courts in a procedurally

8   appropriate manner.  Castille v. Peoples, 489 U.S. 346 (1989); Baldwin v. Reese, 541 U.S.

9   27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the

10  prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the

11  court to the federal nature of the claim.").  A petitioner must describe both the operative facts

12  and the federal legal theory so that the state courts have a "fair opportunity" to apply

13  controlling legal principles to the facts bearing on his constitutional claim.  Id., at 33.  In

14  cases not carrying a life sentence or the death penalty, claims are exhausted once the Arizona

15  Court of Appeals has ruled on them.  Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir.

16  1999).

17      Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally

18  appropriate manner, his claims are procedurally defaulted.  Ylst v. Nunnemaker, 501 U.S.

19  797, 802-05 (1991); Coleman, 501 U.S. at 731-32. There are two types of procedural default.

20      First, a state court may have applied a procedural bar when the prisoner attempted to

21  raise the claim in state court.  Nunnemaker, 501 U.S. at 802-05.  For example, a habeas

22  petitioner may be barred from raising federal claims that he failed to preserve in state court

23  by making contemporaneous objections at trial or by raising the claim on direct appeal or

24  post-conviction review.  Bonin v. Calderon, 59 F.3d 815, 841-42 (9th Cir. 1995)(stating that

25  failure to raise contemporaneous objection at trial to an alleged violation of federal rights

26  constitutes a procedural default of that issue); Thomas v. Lewis, 945 F.2d 1119, 1121 (9th Cir.

27  1991)(finding procedural default where the Arizona Court of Appeals held that petitioner had

28  waived his claims by failing to raise them on direct appeal or in his first petition for post-

1    conviction review.)  If the state court found a procedural bar but also addressed the merits

2    of the underlying federal claim, the "alternative" ruling does not vitiate the independent state

3    procedural bar.  Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carriger v. Lewis, 971 F.2d

4    329, 333 (9th Cir. 1992) (en banc court held that a state court may alternatively deny relief

5    on the merits of a federal constitutional claim even after dismissing the claim on procedural

6    grounds).

7         A higher court's subsequent summary denial of review affirms the lower court's

8    application of a procedural bar.  Nunnemaker, 501 U.S. at 803.  In order to "constitute

9    adequate and independent grounds sufficient to support a finding of procedural default, a

10   state rule must be clear, consistently applied, and well-established at the time of the

11   petitioner's default."  Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994).  Arizona courts

12   have consistently applied their procedural default rules.  Stewart v. Smith, 536 U.S. 856, 860

13   (2002)(holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and

14   independent procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998)(rejecting

15   the argument that Arizona courts have not "strictly or regularly followed" Rule 32); Carriger

16   v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992)(rejecting the assertion that Arizona courts'

17   application of procedural default rules had been "unpredictable and irregular.").

18        In the second procedural default scenario, the state prisoner may not have presented

19   the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state

20   court would be "futile."  Teague v. Lane, 489 U.S. 288, 297-99 (1989).  Generally, any claim

21   not previously presented to the Arizona courts is procedurally barred from federal review

22   because any attempt to return to state court to properly exhaust a current habeas claim would

23   be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th

24   Cir. 2002); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on

25   appeal, or in any previous collateral proceeding); Ariz. R. Crim. P. 32.4 (stating that in a

26   Rule 32 of-right proceeding, notice of post-conviction relief must be filed within 90 days

27   after entry of judgment and sentence or within 30 days appellate mandate); Ariz. R. Crim.

28   P. 32.9 (stating that petition for review must be filed within thirty days of trial court's

1   decision).  A state post-conviction action is futile where it is time barred.  Beaty, 303 F.3d

2   at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness

3   under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-

4   conviction relief, distinct from preclusion under Rule 32.2(a)).

5         In either case of procedural default, federal review of the claim is barred absent a

6   showing of "cause and prejudice" or a "fundamental miscarriage of justice."  Dretke v.

7   Haley, 541 U.S. 386, 393-94 (2004); .  To establish cause, a petitioner must establish that

8   "some objective factor external to the defense impeded [his] efforts to comply with the

9   State's procedural rules."  Murray v. Carrier, 477 U.S. 478, 488 (1986)  The following

10  objective factors may constitute cause: (1) interference by state officials, (2) a showing that

11  the factual or legal basis for a claim was not reasonably available, or (3) constitutionally

12  ineffective assistance of counsel.  Id.   To establish prejudice, a prisoner must demonstrate

13  that the alleged constitutional violation "worked to his actual and substantial disadvantage,

14  infecting his entire trial with error of constitutional dimension."  United States v. Frady, 456

15  U.S. 152, 170 (1982) (emphasis omitted).  Where petitioner fails to establish cause, the court

16  need not reach the prejudice prong.

17        To establish a "fundamental miscarriage of justice" resulting in the conviction of one

18  who is actually innocent, a state prisoner must establish that it is more likely than not that no

19  reasonable juror would have found him guilty beyond a reasonable doubt in light of new

20  evidence.  Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

21        **Claim 2.**

22        Respondents assert that Petitioner failed to exhaust his claim that he received

23  ineffective assistance of counsel when his counsel, at sentencing, failed to object to the

24  court's consideration of aggravating factors to enhance his sentence.  Petitioner did not raise

25  an IAC claim related to his sentencing in PCR proceedings.  Instead, he challenged directly

26  the sentencing court's consideration of aggravating factors, and the court ruled that the claim

27  lacked merit.  In his petition for review to the Arizona Court of Appeals, Petitioner also

28  framed his claim as a denial of his constitutional right to a jury trial when the trial court

1    aggravated his sentence.  Thus, Petitioner failed to exhaust claim 2 by affording the state

2    courts the opportunity to rule upon the merits of his federal constitutional claim.

3    Because state procedural rules would preclude a return to state court to exhaust his

4    claim, and thus would be a "futile" exercise, Petitioner's claim is procedurally defaulted.

5    Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty, 303 F.3d at 987; Ariz. R. Crim. P. 32.1(a)(3)

6    (relief is precluded for claims waived at trial, on appeal, or in any previous collateral

7    proceeding); Ariz. R. Crim. P. 32.4 (stating that in a Rule 32 of-right proceeding, notice of

8    post-conviction relief must be filed within 90 days after entry of judgment and sentence or

9    within 30 days appellate mandate); Ariz. R. Crim. P. 32.9 (stating that petition for review

10   must be filed within thirty days of trial court's decision.  A state post-conviction action is

11   futile where it is time barred.  Beaty, 303 F.3d at 987.  Arizona's preclusion rules are an

12   adequate and independent procedural bar.  Stewart v. Smith, 536 U.S. 856, 860 (9th Cir.

13   2002) (per curiam).

14   Petitioner in his Reply and supporting Memorandum asserts to the contrary, that he

15   did adequately raise an IAC claim relating to the court's consideration of aggravating factors.

16   (Docs. 17 at 6-7, 16 at 9.)  A careful review of Petitioner's PCR petition and motion to

17   amend PCR petition demonstrates, however, that he did not present this claim.  (Exhs. I, J.)

18   This is further apparent by the trial court and the court of appeals' careful delineation and

19   discussion of the specific claims raised by Petitioner.  (Exhs. K, M.) Petitioner also asserts

20   that Respondents have waived the defense of procedural default because Respondents did not

21   assert this affirmative defense in their Answer, as ordered by the Court.  (Docs. 5 at 3; 16 at

22   9; 17 at 7.)  Petitioner is mistaken, as Respondents clearly raised the affirmative defense of

23   procedural default in their Answer.

24   Furthermore, Petitioner does not demonstrate cause and prejudice, or a fundamental

25   miscarriage of justice to excuse his procedural default.  In his Memorandum filed in support

26   of his Reply, Petitioner complains that "[he] is a Mexican National who's an unsophisticated

27   layman litigating without the benefit of a law library: no access to updated caselaw or

28   caselaw at all; no computer as paralegal assistance; or typewriter; was only allowed to attend

1    the library once a week for only three hours; basically as fundamental avenues to challenge

2    the Constitutionality of Detention and is unable to construct any meaningful petition." (Doc.

3    16 at 3.) Petitioner's asserted limitations do not rise to the level of some "outside factor" that

4    prevented him from complying with the state's procedural rules. Petitioner was able to raise

5    and articulate other claims in his state pleadings - his PCR petition, petition for review to the

6    Arizona Court of Appeals, and petition for review to the Arizona Supreme Court - and cited

7    numerous cases and other authority, thus belying his claim that he was unable to access legal

8    material or legal assistance in constructing his claim, or that he was handicapped because he

9    is unsophisticated and a Mexican national. Petitioner also does not establish that he is

10   actually innocent. Although he asserts facts that he claims undermine his conviction - the

11   victim may not have been wearing a seat belt, the driver admitted in an insurance deposition

12   that he "T-boned" Petitioner's car, the victim should have been flown to the hospital, and was

13   improperly intubated[2], - these facts do not amount to tangible evidence of actual innocence.

14   Petitioner pleaded guilty and expressly affirmed the factual basis for his crimes, specifically

15   that he recklessly killed a teenage girl and wounded her brother.

16       Alternatively, Petitioner's claim lacks merit. The trial court determined that Petitioner

17   knowingly and voluntarily waived the right to have a jury find aggravating factors in his plea

18   agreement and on the record during the change of plea proceeding. The trial court noted in

19   his ruling on Petitioner's PCR petition that it was "expressly reiterated to Defendant in the

20   change of plea proceeding that [he] was giving up his right to have a jury determine all of the

21   sentencing factors." (Exh. K at 2.) Furthermore, Petitioner's plea agreement specified, and

22   the trial court emphasized **five separate times**, that he would receive a sentence between

23   10.5 and 14 years.

24       Thus, even if Petitioner had raised an ineffective assistance claim relating to the

25   imposition of an aggravated sentence, there would be no prejudice, as the trial court's

26

27       [2]Petitioner asserted these facts to the trial judge before his sentencing and in state

28   court PCR pleadings. (Exhs. F at 37-44; G; I at 4-8; L at 6-9; N at 2-3; Doc. 1 at 14-15.)

1    determination that there was no violation of Petitioner's right to have a jury determine

2    aggravating factors was not (1) contrary to, or an unreasonable application of, clearly

3    established federal law as determined by the United States Supreme Court; or (2) based on

4    an unreasonable determination of the facts in light of the evidence presented in the State

5    court proceeding.  28 U.S.C. § 2254(d).

6        Petitioner requests as relief in this matter, that his conviction be set aside and

7    additionally, that the court impose a plea deal stipulating to a class 4 felony based upon a

8    state statute.[3] (Doc. 1 at 6, 16.) Given this Court's finding that Petitioner's claims lack merit

9    or are procedurally defaulted, it will recommend that all requested relief be denied.

10   **CONCLUSION**

11       For the foregoing reasons, the Court finds that claim one of Petitioner's habeas

12   petition lacks merit, and claim two is procedurally defaulted, and alternatively, lacks merit.

13   Thus, the Court will therefore recommend that the petition be denied and dismissed.

14   **IT IS THEREFORE RECOMMENDED:**

15       That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be

16   **DENIED** and **DISMISSED WITH PREJUDICE**;

17       **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

18   to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a

19   substantial showing of the denial of a constitutional right and because dismissal of the habeas

20   petition is justified by a plain procedural bar and jurists of reason would not find the

21   procedural ruling debatable.

22       This recommendation is not an order that is immediately appealable to the Ninth

23   Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

24   _____

25       [3]Petitioner cites A.R.S. §28-661, which describes and classifies the crime of a driver
26   involved in an accident who fails to stop or render aid at the scene of an accident.  It is
     unclear why Petitioner would be entitled to a plea under this statutory provision, as there is
27   no claim or evidence that he fled the scene, and unclear how this statutory provision would
     have "undermined the Manslaughter and Aggravated Assault charges" as he alleges
28   repeatedly in his proceedings.  (Docs. 1 at 16; 17 at 11; 16 at 13.)

Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 1st day of February, 2016.

_____
Michelle H. Burns
United States Magistrate Judge